Case number 22-7117. Michelle Florio as personal representative of the estate of Stephen Florio, deceased, et al. Appellants versus Gallaudet University et al. Mr. Mills for amicus curiae for appellants. Mr. Zatz for appellees Gallaudet University et al. and Roberta Cordano. And Mr. Gamsey, appellee WP company doing business as the Washington Post. Mr. Mills, good afternoon. Thank you, your honor. I may have pleased the court. Gallaudet's university's president is the central figure of prominence and authority within the worldwide deaf community. But when she, shortly after the killing of George Floyd, referred to a photograph of 34 fraternity members saluting that they were the face of systemic racism with unacceptable behavior, people listened. When she invoked undisclosed new information underlying her accusation of racist rituals, people listened. When she accompanied her signs with sinister appearing gestures, people listened. Likewise, when the Washington Post repeated her statements under the headlines, anti-Semitic photo involving Nazi salute, people listened. The Post printed those stories in the news section replete with quotations suggesting it was all true. But it wasn't true. The old photograph shows a group of fraternity members doing an American salute established in the 1890s. Members are a group of racially diverse fraternity members wearing t-shirts and jeans. The damaging statement is that the students were part of the face of systemic racism, right? That's the guts of this. In part, your honor, I think that's obviously the particular statement that the president offered in the Post-Republican. So let's start with that. We have cases, we have twice said, and the D.C. Court of Appeals has once said that the word fascist has a lot of very damaging connotations. It's emotionally loaded. We've said it means different things to different people. It's highly contestable and that epithet can't support a defamation claim. And we've sort of analogized the epithet antisemitic to the word fascist. So how do you get over that? And isn't the systemic racist charge as ugly and damaging as it is? Isn't it like the fascist epithet? So first, your honor, I'd point to what this court said in FARA, which was the statement that the plaintiff must... Sorry, which case? In FARA versus Esquire. This is 736 F-3528. The statement that the plaintiff must prove false is not invariably the literal phrase published, but rather what a reasonable viewer would have understood the author or here the signer to have said. So in other words, I think focusing only on the basis of systemic racism misses the at least plausible inferences that a reasonable viewer could have drawn from the statement, including that. So if she had simply said this fraternity, you know, this picture is... Here's a picture. This is systemic racism, period, full stop. Would that be actionable? Or is that just an epithet? I think it could possibly be actionable because I think it's plausible that a reasonable viewer could have understood that to mean this conduct is racist. These people are racist. What they are doing in the picture is a racist gesture. And here, when accompanied with signs of a sinister appearance salute, this is a Nazi salute specifically. So, you know, I acknowledge Judge Katz's that, you know, there is precedent about the general sort of fascist or racist label. But on the other hand, this court ombud decision in Jaff says actionable to signify that the plaintiff is a bigot, racially prejudiced and scornful of the Negro race that was at 655. And then liberally lobbied, the courts wouldn't say that anti-Semitic had no core of meaning. So and we've cited lots of cases, particularly when that accusation is tied to conduct as it is here. There is an implied, maybe it's not implied, but there is a suggestion. It's key to specific conduct. Might or might not help you. But why doesn't that just bring you within the cases where you have an opinion and the basis for the opinion is disclosed? The basis for the opinion is they are doing this symbol and people, the opinion is that it's racist and people can debate that. I think that that doesn't bring it within that exception, because under D.C. law, uh, the facts on which the opinion is based have have to be disclosed in full, completely and accurately. But the Supreme Court said in Milkovich this. I mean, but there's a picture here. Well, sure, but but the president, you know, depicts worth a thousand words, what they what the students were doing, which was the basis for the opinion that their face of systemic racism. Well, your honor, what's interesting is I think there's even case law cited in the treatises we cite on the point that just showing a photograph can can actually be defamatory because you're not disclosing adequately sort of the facts underlying the photograph. So, for example, if if you showed a 1910 photograph of schoolchildren doing the they recited the Pledge of Allegiance to say those school kids were doing a Nazi salute would be false. It would just be false. And so the question here is now that we are past that point in an era where, you know, there are two there are multiple salutes, which arguably there are some similarities to each other. Could it still be false? And I think the answer is yes. And courts commonly figure out whether particular actions were taken for racist reasons. I mean, that's that's the basis of Title seven, Title six, Arlington Heights, equal protection. So it's not that unusual for a course to have to say was a particular action taken because because of race in terms of complete disclosure. You know, the Supreme Court in Milkovich said if the facts disclosed are either incorrect or incomplete, the statement may still imply a false assertion of fact. I think here, coupled the president's statement, coupled with the claim that she had new information, coupled with the statement, this behavior is unacceptable, which I'll note the defendants in all of their briefing has never addressed that phrase. Plausibly leads a reasonable viewer to say this asserts a statement of fact about the fraternity members that they were doing a particular salute, a racist Nazi salute with a bad motive. Is that the idea? You know, I mean, that's an assertion of fact, like fact questions that come up every day cases, but it might be broader than that, right? It might be some idea that regardless of their motive and regardless of ancient history of the Bellamy salute, you just shouldn't be doing that kind of thing now that it's forever associated with something really ugly. Right. So I think I think your honor's right. It could be. I think there are actually two plausible meanings. One could be they are doing a Nazi salute. The other could be they are acting with racist motives. And I think either of Liberty, in fact, said an accusation of racist motives underlying a racist slur. This is a case involving Joy Reed, the commentator were actionable. And I think the same same logic lies here. So to to to to continue on sort of the second major argument here, which is are the statements actionable? We've identified several statements from the president that we think the question before the court is, as Judge Edwards said, why rich, whether a reasonable fact finder could conclude that a statement expressed or implied a verifiably false fact about the appellants. So the first the first statement. In our view, the president's statements implied that the case law and in twenty seven to twenty eight of the supplemental brief saying when an accusation of racism is tied to specific conduct is actionable because it can be proven true or false. The second, this the president's statement, as I just said to Judge Cassis, implied that the members were performing a Nazi salute. The university's own lawyer verified that it was not a Nazi salute in 1994 after the fraternity discontinued its use. What is the difference? Is there a difference between the Nazi salute and the Bellamy salute? Is it the angle of the right arm or what is from from my from my understanding, your honor, it is partially the angle. It is partially the way the palm is is held and the rest of the arm. The complaint alleges that the Nazis adopted a salute that was had its origin in Roman use. And what the complaint specifically says is that salute bears some similarities to the Bellamy salute that had been adopted in the 1890s as the Pledge of Allegiance salute. I think there are some similarities is is different than what sort of the district court said about a parent Nazi salute, which is that's the same thing. I don't think that's quite right. I don't think it's quite to say that the sting from saying the Nazis adopted a salute that was based in Roman times that bore some similarities to this salute they were actually using has the same sting as just a parent Nazi salute, followed in the post story by all these quotes suggesting that it was true. I think the sting there is different. So even if you if you put aside the post sub headline that just said photo involving Nazi salute and looked in the text where they said a parent Nazi salute, I think the text is is plausibly different. Finally on on just briefly on of and concerning again not once in the defendant's briefing have they addressed the president's reference repeated in the post that this behavior is unacceptable. This behavior plausibly refers to the conduct shown in the photo the only known photo which shows everyone doing the same action. So this is different from the other group defamation cases because there's simply no way to say the statement could only apply to particular members in the photograph. That tends to help you on the point that she's referring to the 34 students in the photo rather than the fraternity writ large. But it's seems to be very that is very clearly a statement of opinion. This is unacceptable. Certainly this specific this is unacceptable but I think behavior underscores that she is making a there is an implied potentially implied statement of fact that what she is saying is that there is a racist salute right or a Nazi salute happening. So for those reasons I'd reserve. We if we don't agree with it we believe that the I'm sorry about my throat. We think that the statement refers to the fraternity and not to the individuals. I mean there's a fight over what they means. Is that it for you for your side? Your honor I think if if they refers to the fraternity I think you still have the other statement from the Washington Post which says anti-semitic photo. So you know I I think that could only be read to apply to the photo to the people in the photo who are all doing the same action. I also think that even setting aside they I think the reference to this behavior points it at at the behavior that's in what the president said are the pictures but the complaint alleges is the only known photo from 1989 of the of the photograph. So I still think it is possible that a jury could find that a reasonable viewer would have viewed this statement as as specifically about the members understood to be pictured in the 1989 photo even if they standing alone referred to Kappa Gamma generally. The remainder of my time. All right thank you. Mr. Zatz. Thank you Judge Henderson and may it please the court. President Cordano did not display the photo in her talk to her Gallaudet community. She didn't describe any photo as Nazi-like. She did not say a word about anti-semitism and she made no factual statement whatsoever about a photograph. She referenced the photo. Reference the photo Judge Katz says only to the extent of acknowledging its existence in I'm not even sure what the right part of speech is some sort of dependent clause. In referencing the photo she used the phrase face of systemic racism and she said this behavior is unacceptable. Correct. I agree with you the guts of this case is the phrase the face of systemic racism. That was a phrase used to discuss Kappa Gamma in the middle of a paragraph about Kappa review of other organizations other fraternities and sororities on campus. We're on a motion to dismiss. Correct. Right so we're not tell me if you disagree with this but we're not here to adopt the most reasonable reading of these statements. The only question for us is whether a reasonable jury could interpret them in a way that's defamatory. I agree that the standard here is the hypothetical objective reasonable reader and not the actual subjective reason reader and that's why I think all the allegations of harm in this case are really quite irrelevant to the of and concerning issue. I want to add though an important point that my friends from the post made in their brief about the photograph and that is this. The photograph is just an example of a 90 year practice. Hundreds perhaps thousands of Kappa Gamma alumni at one point on campus use that salute. And so even if you think of the photo as representing some sort of behavior whose acceptability is at issue here it's the behavior of hundreds or thousands of former Kappa Gamma members and so that base of systemic racism is the conduct depicted in the photo. I would respectfully disagree that that what conduct what unacceptable conduct is the face of systemic racism. The salute the resumption of robes which violated a 2015 policy and whatever else may have been bandied about on social media that's not alleged in the complaint all we know is that there was social media chatter about recent events on campus involving Kappa Gamma particularly in the context the murder of George Floyd. Salute is the object of a long string of propositional phrases flowing from the word pictures and the only picture we know about involving the salute is one of 34 students doing it. Correct. You don't think a reasonable jury could tie the face of systemic racism unacceptable conduct points to the students the acts in the depicted in the photo? I don't think we ever get there your honor. I don't think that's what this discussion was about. This was a discussion about the suspension of Kappa Gamma review of other organizations other fraternities and other sororities on campus what their role in the campus community was and the overall social media response to all of these allegations about Kappa Gamma. I think it is a too literal too narrow and artificial reading to say that the particular placement of the word they in an unattributed interpretation of ASL which is a foreign language as far as English goes. It is a foreign language point one. Point two the transcript the version that the complaint says was the spoken version in ASL is it's a little bit garbled right human speech is I don't speak in beautiful sentences the way one writes and so it seems like you're being a little artificial parsing this oral statement coming from a foreign language as if it were a statute where you know we're doing fine judgments about the closest reasonable reference as opposed to just making a rough cut motion to dismiss judgment about what a jury how a jury might read this. Well we're not in ordinary motion to dismiss land here your honor we are in the arena of the first amendment where such a discussion on a matter of public concern the supreme court has told us is entitled to special protection as uninhibited robust and wide open discussion. We have that on the one hand a university president making a call to action for a university committee community on this terribly urgent issue of public concern and on the other hand we have the plaintiffs offering up this unattributed first first amendment law doesn't trump Twombly and Iqbal. I'm sorry? First amendment law doesn't trump Twombly and Iqbal. You do have a favorable substantive standard if we get to the merits. Understood your honor and that's what I'm trying to say is I don't think this is just a plain vanilla Iqbal and Twombly pleading issue here. I think this has to be considered under the gloss of the first amendment to allow people like president Cordano speaking on urgent issues of public concern to speak in an uninhibited robust and wide open fashion particularly where as you point out she's talking about something that is not objectively verifiable. You know the allegation here as I think you're interpreting it your honor is that these four people personally out of a 90-year history of this salute have become the face of systemic racism as to an entire community. There's no way to verify that that is classic. Theirs are the only faces. I'm sorry? Theirs those 34 young men are the only faces. I mean the the word face we can't ignore that. Well I think it's a very metaphorical. If she had said this is the behavior of systemic racism but to use the phrase the word faces makes it human and the only faces that we have are the faces of those 34 young men. Well we have those faces in the sense that they chose to sue but I think the face in context and language here is Kappa Gamma. The conduct of Kappa Gamma exemplified perhaps in this salute as well as in the much more recent issue of the robes has become associated in the public mind with racism at Gallaudet. All President Cordano was doing was observing what was being said on social media and offering essentially her opinion about public opinion. We called this commentary on commentary. She's looking at what other people are saying expressing their own opinions saying here is how I would subjectively characterize what others are saying and it is I think inherently so inherently a metaphorical imaginative rhetorical expression that it despite Milkovich and despite any facts that are alleged to be the basis and I actually believe there are no facts that are the basis other than perhaps the social media discussion itself. I don't remember her saying this is what social media is saying. Well it's in the exact same clause that Judge Katsas is referring to us. What is that? They have become the face of systemic racism in our community with photographs of the salute and the robes being shared on social media is observing the social media reaction the opinions and commentary of others and offering her own commentary on what they're saying in a way that is not objectively verifiable. It's not a statement of fact. Can I ask what you do with Jaffe? We were talking about the phrase systemic racism. Yeah. Seems analogous. I mean I was asking your friend about the word fascist but it also seems analogous to the word bigot and this court sitting in bank when we had final control over DC law said that charging someone with being a bigot did support a defamation claim. Your honor, we discussed that in our brief. I think Jaffe is not only very outdated years before the sort of modern law of the constitutional dimension of opinion but it is also contrary to the vast majority cases decided since then. There is a consensus on this. It's binding. It's as if it were a DC court of appeals opinion. I don't think it's binding after Ullman versus Evans in 1984 which actually set out a four-part test. In 1984 we didn't have final control over DC Bible law. In 1966 we did. Even so, your honor, I think it is simply not the law in 2023 that's simply calling somebody a bigot. Unverifiable subject commentary is actionable and that's why by the way my friend on the other side accused us of cherry-picking case law. I ordinarily don't tell a brief but we cited 20 cases literally from sea to shining sea to say courts agree now calling somebody a racist, calling somebody a bigot, calling somebody anti-semitic or homophobic. Those are subjective judgments. They are not objectively verifiable. They are not actionable in defamation. Unless there are any other questions, I see my time is up. All right, Gamzee. Your honors, may it please the court, I'm Gamzee from Williams and Connolly, Washington Post. The post article at issue here concerned a pre-existing public controversy. I'll you that suspension of a historic fraternity which the university's president said had become the face of systemic racism in the Gallaudet community. Those statements at issue which are distinct from Gallaudet's are not actionable for three reasons. First, they are not of and concerning the plaintiffs. Second, they are not verifiable subjective opinion. And third, to the extent they are verifiable, they are substantially true. The district court here dismissed the statement says against the post on all three grounds. I'd like to begin with unless the court would prefer a different word. Well, let me just start you with actionability, which is my biggest concern. So the key phrase, key phrase vis-a-vis the post is anti-semitic. And we have one of the liberty lobby cases, I think it was Judge Borks, says anti-semitic can have substantive content to support a defamation claim. Not always, but sometimes. So what do we make of that? Well, you have to consider the context of the entire article. Here, the article includes views from several different stakeholders regarding the salute and the robes. And so taken in context, anti-semitic is clearly a reference to use of what is to the salute, which is described and criticized by several of the commentators. The article quoted Hillel of Gallaudet, which contended that the salute insulted the memory of millions of Jewish, LGBT, and disabled individuals and others who were murdered during the Holocaust, for example. It's clear from those statements what the anti-semitic phrase is referring to. It's referring to the raised arm salute in the post-World War II era. That's explicitly what the Hillel statement makes clear. And I would note also that the, as the district court recognized, the languages phrased and language of apparency, such as, it resembled a Nazi salute. It was KKK, resembled KKK garb. And this language helps to qualify and make clear that it is statements describing, excuse me, statements describing the norms and thinking about how these gestures are considered in post-World War II public life. I'll note also that they were not only criticized by Hillel, for example, but also, not just by the university, but also by the fraternity itself. The Kappa Gamma International statement acknowledges, it was wrong for us to force this salute on our pledges, no matter what is their background. Most of all, it was wrong for us to ignore the calls for its complete cessation. We have long since denounced these gestures. And so I think it's important to note that in 2016, the fraternity had made clear that the gesture was denounced, was no longer consistent with the fraternity's standards of conduct, whether for pledges, current students, or even alumni. And that's a really significant concession complaint, which gave rise to the bit of anachronism here. I mean, you know, probably today, if students made that gesture, most people would react pretty strongly. And this is a 30-year-old photo. And rightly or wrongly, people were less sensitive than at the time. And it might be perfectly plausible that they were following the old Bellamy tradition and the old fraternity tradition in good faith with no animus. How can we rule that out? Because the article is being published and interpreted in 2020, not in the pre-World War II era when the Bellamy salute was invented. And that's precisely why it was so harshly criticized. It's charging students who were acting in whatever it was, 1989, 88? 1988, yes. But it's important to bear in mind that the article is describing the suspension of the fraternity generally. Hillel's statement is describing the use of the salute by the fraternity generally, not specifically with reference to the photograph. And that's really significant here because the photograph is being used as an example, an illustration, which speaks to why the post article here and the statements at issue are not specifically of and concerning these specific plaintiffs. Rather, the statements are describing a practice which plaintiffs admit was used for decades. There's no specific reference to the plaintiffs that can be discerned from the post article. And it's important to bear that in mind because that is a third alternative reason to dismiss the case. It is not of and concerning the plaintiffs. And the case law requires, and again, you spoke earlier, Judge Katz, as to the period in which this court was speaking for the Court of Appeals. And that's true of the service parking case when the court held that statements must be reasonably susceptible of special application to a given individual. The court acknowledged was in part intended to ensure that there was appropriate balance with the social interest and free press discussion of matters of general concern. It's exactly what was happening in the post article here. I realize that my time has lapsed. I want to be respectful of that unless you have any questions. All right. Thank you. I can take a few minutes. Thank you, Your Honor. Just to respond briefly, my friend says the but that's not what she was doing. She specifically brought up a specific photo, used signs that were sinister appearing and said this behavior is unacceptable and later said I made a mistake in shifting the focus away from systemic racism. Why? Because reasonable viewers understood her to be talking about this specific photograph, the only known photograph that matches her description. On Jaffee, Ullman cited Jaffee. It didn't overrule it. It didn't say it was wrong. It didn't say anything inconsistent with it. So hard to reconcile. I mean, we couldn't have overruled it sitting, you know, post T.C.C.A. getting the final authority. But it's very hard to reconcile the style and general approach of Ullman and Liberty Lobby with the thrust of Jaffee. Your Honor, I think this case avoids that problem because it bears on specific conduct. So the allegation, a reasonable viewer could have drawn from the presence in the post statements that the photo, as the post subheading said, involved a Nazi salute. It did not. A lot of these cases involving these terms turn on whether the epithet is supported by subsidiary allegations of fact, which can be testable. So if there's a false allegation of fact supporting the conclusion that this person's a racist, you can bring that claim. What's the false? Is there a false predicate allegation here? So I think a false predicate is that it is a Nazi salute. I mean, I think that is something that can be historically considered and could be probed through discovery. Again, the university itself said in 1994 it was not a Nazi salute. So I think that is a factual. What if the predicate fact is it looks uncomfortably like a Nazi salute? That is either true, a true statement of fact or an opinion. I don't think, you know, I think that's not a matter to resolve on a motion to dismiss. I think, you know, you could say someone walking down the street in black boots was wearing apparent Nazi jackboots, but that doesn't mean that doesn't make it fair or true to say a person wearing Nazi jackboot walking down DC street. So I think that's the difference. This country faces real racial issues. So does Gallaudet. Lobbying false accusations of racist conduct diminishes, distracts from those real issues. And when those accusations are targeted at people, they're not protected by our law. The score should reverse and remand. Let me ask you, Mr. Mills, and this may be unfair, an unfair question, but what is your thought about whether these plaintiffs have a cause of action against the respective employers who fired them based on this? Your Honor, I know that one of the plaintiffs had brought suit in Massachusetts on some grounds. I think, you know, I think it would depend on the exact employment contracts and that type of thing. And the state laws governing employment. So I don't know that I can give you a better general answer than that. All right. You were appointed by the court and we thank you for your superb representation.
judges: Henderson, Katsas, Edwards